DECISION AND JOURNAL ENTRY
{¶ 1} Plaintiff-Appellant Diane May has appealed from a decision of the Summit County Court of Common Pleas, Domestic Relations Division, that denied her motion for prejudgment interest and awarded her less than the amount she requested in attorney's fees. This Court reverses and remands.
 I {¶ 2} This matter involves a divorce that spans from May 1985 to the present. However, this Court will only discuss those facts pertinent to the instant appeal. The pertinent facts are as follows. Plaintiff-Appellant Diane May and Defendant-Appellee Robert Hughey were married in Akron, Ohio, on April 20, 1974. Three children were born as issue of the marriage, to wit: James, Kathleen, and Elizabeth. Appellant filed for divorce on May 6, 1985. Appellee filed an answer and counterclaim for divorce on August 28, 1985; Appellee later withdrew his counterclaim after the parties entered into a separation agreement. The divorce was granted on March 3, 1986. A separation agreement, which the parties had previously entered into, was incorporated into the judgment entry of divorce. Appellant was designated as custodial parent of all three unemancipated children. Appellee was ordered to pay Appellant child support in the amount of $45.00 per week, per child, plus a monthly processing fee.
 {¶ 3} The terms of the separation agreement further provided: 1) Appellant would receive title to the marital residence and Appellee would quit claim his interest in the residence in return for a mortgage in the amount of one-half of the present equity existing in the residence; 2) Appellee would maintain health and hospitalization insurance plans for the minor children and pay for "any and all extraordinary medical, dental and optical expenses for the three minor children or any one of them so long as he has an obligation to pay child support";[1] 3) each party agreed to pay one-half of any orthodontia expenses incurred by any one of the minor children; and 4) Appellee agreed to set aside one-half of any monies or proceeds obtained from the sale of his service for relief of his pension rights, and the monies would be placed in a trust fund on behalf of the minor children.
 {¶ 4} On June 1, 2001, Appellant filed a motion entitled "Motion for Post Decree Enforcement and Show Cause; Motion for Pre-Judgment Interest; Motion for Award of Attorney's Fees." In the motion, Appellant moved the court to enforce certain terms of the separation agreement. Specifically, she requested the court to: 1) allow Appellant to prove that Appellee was in arrears of $10,000 for failure to pay medical bills incurred by the children, which was in violation of the separation agreement; 2) grant judgment in her favor for one-half the value of the pension Appellee agreed to place in a trust fund pursuant to the separation agreement, but which he failed to do; and 3) grant her prejudgment interest from the date Appellee received monies from the sale of his pension. Appellant also sought attorney's fees and moved for an order ordering Appellant to show cause why he should not be found in contempt of court "for his willful violation of the Separation Agreement[.]" Appellee filed an objection to Appellant's post-decree motion.
 {¶ 5} Appellant filed a supplemental motion to her June 1, 2001 motion, entitled "Supplemental Motion for Post Decree Enforcement and Show Cause." In the motion, Appellant provided a more detailed listing of medical expenses which she argued Appellee was obligated to pay; she requested $14,056.12 for Appellee's failure to pay said expenses. She also explained that Appellee did in fact receive a lump sum payment of $19,831.50 for the sale of his pension. She maintained that she was entitled to one-half the value of the pension, approximately $9,915.75. Appellant further maintained that she was entitled to prejudgment interest on the $9,915.75, calculated from the date Appellee received the money from the sale of his pension or December 31, 1987.
 {¶ 6} A hearing was held on Appellant's motions on October 1, 2001. After the hearing, the magistrate issued an order dated November 9, 2001, wherein it found that Appellee violated the terms of the separation agreement because he failed to establish a trust fund on behalf of the minor children with one-half of the monies he received from his pension buyout; the magistrate determined that Appellee received $9,915.75 in proceeds. The magistrate found, however, that because the separation agreement specifically stated that the trust fund was to be established on behalf of the "minor children" and the final divorce decree was silent as what was to happen to the fund upon the emancipation of the children, the magistrate concluded that the issue was moot.[2]
 {¶ 7} With regard to the children's medical expenses, the magistrate found that some of the medical bills were incurred after the children were emancipated and that the children's aunt agreed to pay for some of the expenses as a gift. As a result, the magistrate concluded that Appellant was entitled to receive from Appellee only those medical expenses incurred by the children prior to their emancipation, after she paid the first $20 per month, per illness, per child. Appellant was not entitled to receive any reimbursement from Appellant for orthodontia expenses incurred by the minor children and paid by their aunt. The magistrate denied Appellant's motion for contempt, but never specifically denied her motion for prejudgment interest.
 {¶ 8} Appellant filed timely objections to the magistrate's decision. Appellee filed a response to Appellant's objections. Pursuant to Civ.R. 53, the trial court modified the magistrate's decision on December 18, 2001. The trial court noted that based on a judgment entry entered on December 11, 1995, which provided that Appellee was responsible for 85.60% of the children's uninsured medical expenses, Appellant was no longer required to pay the first $20 per illness, per month, per child. Appellant was ordered to recalculate the amount of reimbursement based on this formula. The trial court further held that although Appellant's "aunt graciously offered to pay for the children's orthodontia [Appellee is not relieved] of his obligation to pay for these expenses." Appellee was ordered to pay his share of the orthodontia expenses.
 {¶ 9} As to the issue of the pension and trust fund, the trial court found that the magistrate incorrectly determined that Appellee only received $9,915.75 from the pension buyout. Appellee received $19,831.50 from the pension buyout. However, the trial court found that the magistrate was correct in concluding that Appellee failed to place one-half of the monies from the pension buyout in a trust fund on behalf of his children. The trial court further concluded that the issue was not moot because of the children's emancipation. In concluding that the issue was not moot, the trial court looked at the intent of the parties when they agreed to place the monies into a trust fund on behalf of the children. The trial court concluded that the children's emancipation did not relieve Appellant of his obligation to establish a trust fund. The trial court found Appellee in contempt for failing to establish a trust fund, and granted judgment in favor of Appellant in the amount of $9,915.75, plus interest at the rate of 10% per year until the judgment was paid in full. The matter was remanded for another hearing to determine the amount Appellee owed Appellant in unpaid medical, dental and orthodontia bills. The trial court did not address Appellant's motion for prejudgment interest.
 {¶ 10} On September 6, 2002, Appellant filed a motion for attorney's fees. In the motion, she contended that the amount of attorney's fees generated through September 6, 2002, was 65.3 hours, at an hourly rate of $170. Appellant requested attorney's fees in the amount of $11,101.
 {¶ 11} Before the matter was heard on remand, Appellant filed a motion entitled "Plaintiff's Supplemental Motion for Prejudgment Interest." In the motion, Appellant contended that she was entitled to interest on the principal amount of $9,915.75 at the rate of 10% from January 1, 1988 through September 9, 2002 (the date the remand hearing was scheduled to occur). Appellant requested a total of $30, 324.79 in prejudgment interest.
 {¶ 12} On September 9, 2002, a hearing was held only on the issues the trial court ordered the magistrate to revisit, i.e., the minor children's medical, dental and orthodontia bills. In a journal entry dated September 24, 2002, the magistrate found that the unpaid medical bills totaled $3,408.91. Appellee was responsible for 85.6% of that cost. The magistrate further found that: 1) the children received $739.80 in dental services from Dr. Marshall, and that Appellee was responsible for 85.6% of the bill or $633.27; 2) the children received $143.32 in dental services from Dr. Pupino, and that Appellee was responsible for 85.6% of the bill or $122.68; and 3) Appellant had a orthodontia bill in the amount of $6,138 for services rendered on behalf of the children, and even though their Aunt paid the entire bill, Appellee was ordered to pay 50% of the bill and reimburse Appellant in the amount of $3,069.
 {¶ 13} On December 10, 2002, the magistrate issued an order addressing Appellant's motions for contempt, prejudgment interest and attorney's fees. The magistrate found that Appellant was in contempt for failure to abide by the terms of the separation agreement, which required him to establish a trust fund for the benefit of the minor children. The magistrate noted that the minor child, Elizabeth, assigned her rights to Appellant, and that as a result Appellant was entitled to Elizabeth's share of the funds. However, the other minor children, James and Kathleen, revoked their power of attorney, thereby revoking their assignment of the trust funds to Appellant. As a result of the revocations of power of attorney, the magistrate concluded that Appellant was only entitled to one-third of the monies Appellee received from the sale of his pension or $3,305.25. The magistrate granted Appellant, Kathleen, and James judgment against Appellee, in the amount of $3,305.30 each, plus interest at the rate of 10% per year until the judgment was paid in full. The magistrate found Appellee in contempt and granted Appellant $2,465 in attorney's fees. Appellee was sentenced to ten days in the county jail.
 {¶ 14} With regard to Appellant's claim for prejudgment interest the magistrate found:
"20. * * * Although [Appellant] did ask for prejudgment interest from the date [Appellee] received said monies in her original motion filed June 1, 2001, [Appellant] also respectfully requested, in her motion, leave of Court to prove the amount with specificity at the hearing.
"21. The original hearing was held on October 21, 2001. No evidence was submitted to the Court regarding prejudgment interest. When [Appellant] filed objections to the Magistrate's Decision dated November 9, 2001, no mention was made regarding the failure to address the prejudgment interest issue.
"22. It was only after the case was remanded back by [the trial court] dated December 18, 2001, that [Appellant] attempted to present evidence to the Court regarding prejudgment interest.
"23. [The trial court's] order, date December 18, 2001, was clear as to the issues that were to be heard before the Court on remand The issue of prejudgment interest was not one of them and is now res judicata." (Emphasis sic.)
 {¶ 15} The magistrate denied Appellant's motion for prejudgment interest.
 {¶ 16} Appellant filed objections to the magistrate's December 10, 2002 decision. Appellant argued that the magistrate erred in finding: 1) that the attorney's fees she originally requested were unreasonable and excessive; 2) that Appellant was only entitled to $2,465 in attorney's fees, rather than the $8,891 she requested; and 3) that the issue of prejudgment interest was barred by the doctrine of res judicata. Appellant further asked the trial court to clarify the amount of post-judgment interest she was entitled to receive on the monies she was awarded for Appellee's failure to create a trust fund on behalf of their children.
 {¶ 17} On October 6, 2003, the trial court overruled Appellant's objections. Relying on the Ohio Supreme Court decision in Whitehead v.Gen. Tel. Co. (1969), 20 Ohio St.2d 108, overruled in part, Grava v.Parleman Township (1995), 73 Ohio St.3d 379, the trial court held that Appellant was barred from re-litigating the issue of prejudgment interest at the remand hearing based on the doctrine of res judicata. The trial court stated:
"[Appellant] had an opportunity to present evidence regarding prejudgment interest at the original hearing on October 1, 2001. [Appellant] neither offered evidence to support her claim for prejudgment interest at the October 1, 2001 hearing, nor did she object to the Magistrate's failure to award prejudgment interest in the November 9, 2001 Magistrate's Decision. A magistrate is only to address the specific issues remanded at a remand hearing. Prejudgment interest was not an issue to be reheard pursuant to this Court's December 18, 2001 Judgment Entry."
 {¶ 18} The trial court further held that Appellant was only entitled to $2,465 in attorney's fees and $3,305.25 for Appellee's failure to establish a trust fund on behalf of his children, plus interest at the rate of 10% per year until the judgment was paid in full.
 {¶ 19} Appellant has timely appealed, asserting two assignments of error.
 II Assignment of Error Number One
"The trial court erroneously concluded that appellant's claim for prejudgment interest was barred by res judicata/collateral estoppel."
 {¶ 20} In Appellant's sole assignment of error, she has argued that the trial court erred when it concluded that her claim for prejudgment interest was barred by the doctrine of res judicata. This Court agrees.
 {¶ 21} In reviewing Appellant's argument, this Court is required to review the trial court's decision under an abuse of discretion standard. This Court has held:
"When reviewing an appeal from a trial court's adoption of a magistrate's decision under Civ.R. 53(E)(4), we must determine whether the trial court abused its discretion in adopting the decision. * * * `Any claim of trial court error must be based on the actions of the trial court, not on the magistrate's findings or proposed decision.'" (Citations omitted.) Modie v. Andrews (July 26, 2000), 9th Dist. No. 19543, at 5.
 {¶ 22} An abuse of discretion connotes more than a mere error in judgment; it signifies an attitude on part of the trial court that is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Berk v. Matthews (1990), 53 Ohio St.3d 161, 169.
 {¶ 23} The Ohio Supreme Court has explained that the doctrine of res judicata applies when there is "a valid, final judgment * * * rendered upon the merits and an identity of parties or their privies must exist" or "where an issue is litigated that has been `actually and necessarily litigated and determined in a prior action.'" (Citations omitted; alterations added.) Ameigh v. Baycliffs Corp. (1998), 81 Ohio St.3d 247,249. This Court has further explained that the doctrine of res judicata has two distinct concepts: 1) claim preclusion or estoppel by judgment, and 2) issue preclusion or collateral estoppel. Salter v. Marco (Feb. 9, 1994), 9th Dist. No. 93CA005582, at 3. In Salter we stated:
"The first of these concepts is `estoppel by judgment,' which precludes a plaintiff from relitigating the same cause of action. The second concept is `collateral estoppel,' which precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action which was based on a different cause of action." (Citations omitted.) Salter, supra, at 3.
 {¶ 24} Assuming the doctrine of res judicata applies to the instant matter, this Court must first determine whether the issue of attorney's fees was "actually and necessarily litigated and determined in a prior action." Ameigh, 81 Ohio St.3d at 250, quoting Krahn v. Kinney (1989),43 Ohio St.3d 103, 107. To resolve this matter, this Court must examine the trial court's December 18, 2001 and October 6, 2003 orders.
 {¶ 25} In the trial court's December 18, 2001 order, the trial court only addressed the following issues: 1) the dental, medical, and orthodontia expenses Appellee was obligated to pay; and 2) Appellant's request for attorney's fees. The trial court also remanded the matter back to the magistrate for recalculation of the amount of reimbursement Appellee was obligated to pay for his children's medical and dental expenses. The trial court failed to deny or grant Appellant's motion for prejudgment interest; in fact, the court never discussed Appellant's motion for prejudgment interest.
 {¶ 26} The trial court did address Appellant's motion for prejudgment interest in its October 6, 2003 order. However, it denied the motion on the ground that it was barred by the doctrine of res judicata. As previously stated, the doctrine of res judicata applies "where an issue is litigated that has been `actually and necessarily litigated and determined in a prior action.'" Ameigh, 81 Ohio St.3d at 249, quotingKinney, 43 Ohio St.3d at 107. Furthermore, in order for the doctrine to apply, "the issue under consideration must have been `passed upon' or `conclusively decided' in an earlier proceeding. Res judicata does not apply if the issue at stake was not specifically decided in the prior proceeding." State ex rel. Marion County N. Cent. Ohio Rehab Ctr. v.Indus. Comm. of Ohio, 10th Dist. No. 03AP-325, 2004 Ohio App. LEXIS 1264, at *11, quoting State ex rel. Kroger Co. v. Indus. Comm. (1998),80 Ohio St.3d 649, 651. Based upon this definition of res judicata, the doctrine could not have applied to Appellant's motion for prejudgment interest. The matter was never resolved or "conclusively decided" by the trial court, or even by the magistrate. The magistrate's November 9, 2001 order failed to deny or grant Appellant's motion for prejudgment interest. The trial court's December 18, 2003 order, which modified the magistrate's November 9, 2001 order, similarly failed to address the merits of Appellant's motion. As such, we find that the trial court abused its discretion in denying Appellant's motion for prejudgment interest based on the doctrine of res judicata.
 {¶ 27} This Court further notes that Appellant could not have presented evidence to support her claim for prejudgment interest untilafter the trial court remanded the matter back to the magistrate on December 18, 2001. On November 9, 2001, the magistrate initially concluded that Appellant was not entitled to any monies because of Appellee's failure to establish a trust fund with one-half of the monies he received from his pension buyout; thus, Appellant was necessarily not entitled to prejudgment interest on a judgment she did not receive. It was not until after the trial court sustained Appellant's objections to the magistrate's November 9, 2001 order, and held that Appellant was entitled to a judgment in the amount of $9,915.75 plus interest because of Appellee's failure to establish a trust fund, could Appellant have been expected to present additional evidence on her motion for prejudgment interest.
 {¶ 28} Appellant's first assignment of error is well taken.
 Assignment of Error Number Two
"Since the proper standard of review was not applied, the application for attorney fees was improperly decided."
 {¶ 29} In Appellant's second assignment, Appellant has argued that the trial court applied the wrong standard of review when it decided Appellant's motion for attorney's fees. Specifically, Appellant has argued that the trial court abused its discretion when it held that her request for $8,891 in attorney's fees was excessive, and instead awarded her $2,245 in attorney's fees.[3] This Court disagrees.
 {¶ 30} The Ohio Supreme Court has held that a trial court may award attorney's fees based upon statutory authorization. Motorists Mut. Ins.Co v. Brandenburg (1995), 72 Ohio St.3d 157, 158; see, also, State exrel. Fraternal Order of Police v. City of Dayton (1977), 49 Ohio St.2d 219,229 (holding that "it has been held almost universally in other jurisdictions, as an exception to [the rule that in the absence of a statutory provision making attorney fees a part of the costs] a trial court has discretion to include reasonable attorney fees as a part of costs taxable to a defendant found guilty of civil contempt."). Pursuant to R.C. 3105.18(H), a trial court has the authority to authorize attorney's fees in divorce proceedings. That statute provides, in pertinent part:
"(H) In divorce or legal separation proceedings, the court may award reasonable attorney's fees to either party at any stage of the proceedings, including, but not limited to, any appeal, any proceeding arising from a motion to modify a prior order or decree, and any proceeding to enforce a prior order or decree, if it determines that the other party has the ability to pay the attorney's fees that the court awards. When the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees." R.C. 3105.18(H).
 {¶ 31} This Court has further held that "in post-divorce contempt proceedings, the party filing the successful contempt action is entitled to an award of reasonable attorney fees." Huff v. Huff, 9th Dist. No. 20934, 2003-Ohio-1304, at ¶ 37, citing Boraggina v. Boraggina (Mar. 30, 2001), 6th Dist. Nos. L-99-1272 and L-99-1409, 2001 Ohio App. LEXIS 1503. This Court has also held that in determining attorney's fees, "[t]he trial court must make its determination in an equitable and fair manner which serves the ends of justice." Holcomb v. Holcomb (Sept. 26, 2001), 9th Dist. No. 01CA007795, at 16, citing Bowen v. Bowen (1999),132 Ohio App.3d 616, 642, appeal not allowed (1999), 86 Ohio St.3d 1402. The burden of demonstrating the reasonableness of attorney's fees is on the party requesting the fees. Schaffer v. Schaffer (1996),109 Ohio App.3d 205, 214.
 {¶ 32} An appellate court reviews a trial court's decision regarding attorney`s fees under an abuse of discretion standard. Holcomb, supra, at 16. An abuse of discretion connotes more than a mere error in judgment, but an attitude on the part of the court which is unreasonable, arbitrary, or unconscionable. Blakemore, 5 Ohio St.3d at 219. Absent such an abuse, this Court will not reverse a trial court's award of attorney's fees in a post-divorce action. Parzynski v. Parzynski (1992),85 Ohio App.3d 423, 439.
 {¶ 33} In the instant matter, Appellant has maintained that pursuant to Leal v. Holtvogt (1998), 123 Ohio App.3d 51, the trial court should have considered the following factors when it determined the award of attorney's fees:
"(a) time and labor in maintaining the litigation, (b) knowledge, complexity and difficulty of questions involved, (c) professional skill required to perform the necessary service, (d) experience and reputation and ability of attorneys, and (e) miscellaneous expenses of litigation."
 {¶ 34} Appellant has further contended that she "met this criteria both in the application that was docketed * * * and the testimony presented at the September 9, 2002 hearing."
 {¶ 35} This Court first notes that Leal is inapposite to the instant matter. Leal involved the award of attorney's fees for a defamation tort claim. Unlike Leal, this case involves attorney fees for contempt proceedings in the context of domestic relations. As such, a different standard for attorney's fees applies and thus the trial court was not required to consider the five factors outlined in Leal. The trial court was required only to consider whether the attorney's fees requested were reasonable in light of the evidence presented by Appellant and whether the other party had the ability to pay the attorney's fees that the court awarded. See R.C. 3105.18(H).
 {¶ 36} At the September 9, 2001 hearing, Mr. John Vuillemin, an Akron area attorney, presented testimony regarding the work Appellant's trial counsel performed on behalf of Appellant in the contempt proceedings. Mr. Vuillemin testified that he had practiced in the area of family law since 1977 and the area of domestic relations since 1992. He explained that as a result of his experience, he was "familiar with the amount of time that is reasonably necessary to properly either prosecute and/or defend" contempt motions. Mr. Vuillemin further stated that he met with Appellant's trial counsel and reviewed the case file, which included a document entitled "Time Record" that provided a detailed list of the amount of time Appellant's trial counsel spent preparing the case for trial. The case file, Mr. Vuillemin explained, stated that Appellant's trial counsel spent approximately 68.4 hours in preparing and litigating Appellant's post-decree contempt motion. Appellant's trial counsel's hourly rate was $170 an hour, which Mr. Vuillemin described as "a reasonable rate." When asked if the amount of time Appellant's trial counsel spent in litigating the contempt motion, or 68.4 hours, was reasonable and necessary, Mr. Vuillemin explained:
"Well, * * * for the issues that I saw from the court entries, pleadings between the two attorneys, that's not unreasonable. As I look at least — there's about 20 months of activity.
"This case has been active or pending 20 months, about 80 weeks, 60-some hours out to about an average of 3 hours a month, 3 plus. So, that's not a lot of activity. In one sense, it's not too much activity for a file."
 {¶ 37} On cross-examination, Mr. Vuillemin admitted that his conclusion that the time Appellant's trial counsel spent on preparing and litigating the contempt motion, or 68.4 hours, was reasonable was also based on time Appellant's trial counsel spent on the case before the motion for contempt was actually filed; the trial court ruled that it was only going to consider attorney's fees regarding the contempt motion. In light of the trial court's ruling, Appellant's trial counsel conceded that the court should then consider 68.4 hours, less the 11.5 hours spent on the case before the contempt motion was filed. It was further revealed on cross-examination of Mr. Vuillemin that Appellant's trial counsel made numerous typographical errors in correspondence submitted to opposing counsel and the trial court. Appellee's trial counsel also questioned Mr. Vuillemin on the amount of time needed to learn the status of a case and issue a subpoena.
 {¶ 38} Based on the testimony presented at the September 9, 2001 hearing and the appellate record, this Court finds that the trial court did not abuse its discretion in concluding that Appellant's initial request for attorney's fees in the amount of $8,891 was excessive. It was not unreasonable or unconscionable for the trial court to award her $2,465 in attorney's fees. Consequently, we find Appellant's second assignment of error without merit.
 III {¶ 39} Appellant's first assignment of error is sustained and her second assignment of error is overruled. The judgment of the trial court is affirmed in part, reversed in part and the cause is remanded to the trial court to address Appellant's motion for prejudgment interest.
Judgment affirmed in part, reversed in part and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to parties equally.
Exceptions.
Baird, J., Batchelder, J., concur.
[1] Extraordinary, medical, dental and optical expenses for purposes of the separation agreement was defined as "those expenses above Twenty Dollars ($20) per month per illness per child which is not covered by [Appellee's] hospitalization policy."
[2] All three of the parties' children were emancipated by June 2001.
[3] Appellant initially requested $11,101 in attorney's fees. However, after a hearing was held on September 9, 2001, Appellant amended her request to $8,891 in attorney's fees.