[Cite as *Roush v. Roush*, 2019-Ohio-4777.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Allison Roush, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 19AP-246 |
| v. | : | (C.P.C. No. 13DR-1497) |
| William Roush, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on November 21, 2019

**On brief:** *Eugene R. Butler*; *McKinlay Law Offices, LLC,* and *Amy M. McKinlay,* for appellee. **Argued:** *Kerry Hagerman-Froelich.*

**On brief:** *The Tyack Law Firm Co. LPA,* and *Thomas M. Tyack,* for appellant. **Argued:** *Thomas M. Tyack.*

APPEAL from the Franklin County Court of Common Pleas
Division of Domestic Relations

NELSON, J.

{¶ 1} The parties in this case divorced almost five years ago. They still seem unable to resolve even relatively minor differences, a circumstance that can be especially sad in the parental context. This appeal involves the *timing* of a credit that ex-husband William Roush has been accorded for a child support overpayment amounting to something on the order of $2,000 (although the parties don't quite agree as to the precise sum involved).

{¶ 2} The domestic relations judge who has been assisting the parties in the litigious unwinding of their marriage denied, as not in the best interest of the parties' unemancipated son, William Roush's motion to "impound" child support funds now, on the view that "William will be refunded his nominal overpayment of child support * * * at the time the parties' second child emancipates[] and William's child support obligation is

terminated earlier to account for said overpayment." March 27, 2019 Decision and Entry at 3. Noting that "William owes $300,000 - $400,000 to Allison [Clark, formerly known as Roush] in a retirement division that is still pending," and that Mr. Roush's motion, "though permissible, could have been avoided and attorney fees reduced or minimized," the trial court awarded Ms. Clark $1,000 in attorney fees incurred for defending against the failed motion temporarily to cease support. *Id.* at 4-5.

{¶ 3} The trial court's decision provides the necessary background. "After protracted and contentious litigation largely attributable to William's actions, the parties' marriage was terminated" by decree in 2015. *Id.* at 1. Under that decree, Mr. Roush was to pay Ms. Clark $300 per month in spousal support and $1,305 in child support for the benefit of their two minor children, transfer to Ms. Clark 50 percent of the value of a specified IRA and (through a Qualified Domestic Relations Order) $374,404 from his retirement fund, and make certain other payments. *Id.* at 1-2. After the trial court found Mr. Roush in contempt for having failed to make certain payments and the retirement fund transfer, it awarded further attorney fees to Ms. Clark. *Id.* at 2; *see also Roush v. Roush,* 10th Dist. No. 15AP-1071, 16AP-264, and 16AP-388, 2017-Ohio-840) (affirming decree and contempt finding with related fee award). "William's propensity for litigation and failure to abide by court orders precipitated the Court to appoint a Receiver * * *." March 27, 2019 Decision and Entry at 2.

{¶ 4} As that decision further recites, the Roush's older son turned 18 and was emancipated in July 2018. *Id.* That event had the effect of reducing Mr. Roush's child support obligations, but his employer "did not immediately implement the new withholding order and Allison received an overpayment of child support" amounting, as the trial court read the parties' various submissions, to something just over $1,700 as of February or March 2019. *Id.* at 2-3 (relating to the months of October – December 2018).

{¶ 5} Mr. Roush's February 5, 2019 Motion to Impound Funds requested the impoundment of $2,299.26 claimed to have been overpaid as of that date. His motion attached a chain of purported e-mail correspondence between Mr. Roush and someone he characterized as a "representative of the Child Support Enforcement Agency," who told him (in the second to last message appended, dated January 31, 2019 at 12:21:49 p.m., with emphasis added by us) that:

> *The typical thing to do in these situations is terminate the order a little early* but I know you were against doing that when we met last so filing with the court is going to be the best bet.

Mr. Roush's Feb. 5, 2019 Motion to Impound, last page of attachments (emphasis added).

{¶ 6}  The domestic relations judge went with that "typical" approach.  "The Court finds William will be refunded his nominal overpayment of child support, which is documented and 'protected' by FCCSEA's records, at the time the parties' second child emancipates, and William's child support obligation is terminated earlier to account for said overpayment."  March 27, 2019 Decision and Entry at 3.  In denying the impound motion, the judge explained that she "finds an impound of William's child support obligation now would not be in the best interest of the parties' [younger and unemancipated] son, * * * as Allison is still responsible for providing care for him during her parenting time.  Allison presented evidence that her current income is approximately $50,000 annually * * *  At the time of the divorce trial * * *, William's income * * * totaled $122,085 per year. * * * * There is no evidence * * * to indicate that William's income has decreased."  *Id.* at 3-4.

{¶ 7}  Beyond the "significant income disparity between the parties," the trial court found that "they are embattled in continued litigation to effectuate terms of the Divorce Decree * * *, Allison testified her attorney fees owed for other pending matters in this case are approximately $20,000 on which she is unable to make significant payments, and William's proclivity to litigate even nominal matters warrant an award of attorney fees to Allison in the amount of $1,000" of the $1,325 that she expended to defend against the impound motion and seek fees.  *Id.* at 4-5.   The trial court noted that "William owes $300,000-$400,000 to Allison in a retirement division that is still pending.  Certainly, there were numerous ways to offset the relatively small overpayment to Allison with the monumental money owed from William to Allison, to avoid the current * * * motions. * * * * The motion filed by William, though permissible, could have been avoided and attorney fees reduced or minimized."  *Id.* at 4.

{¶ 8}  On appeal, Mr. Roush submits two assignments of error.  He urges that:

> I. The Trial Court erred in refusing to escrow the monies constituting overpayments and improperly received by Plaintiff.

> II. The Trial Court erred in ordering an award in attorney fees
> to the Plaintiff.

Appellant's Brief at iii.

{¶ 9}   For purposes of analysis, we will assume that Mr. Roush's use of "escrow" (in his appeal) and "impound" (in his motion the denial of which he appeals) is intended to be synonymous.  We do not take it amiss that his brief here provides no table of authorities, *compare* Appellate Rule 16(A)(2), because it cites none.  And although Mr. Roush's briefing to us indicates variously that for the last three months of 2018, "a total of $5,289.20 was withheld from the Defendant's pay and for that three month period of time the amount should have been $2,914.65" (a difference of $2,374.55), and that "the overpayment as of January 31, 2019 was $2,299.26,"  Appellant's Brief at 2-3, while Ms. Clark's brief says that the relevant figure is $1,700.76, Appellee's Brief at 4, we are not asked to resolve that discrepancy and need not where the trial court's decision denying impound speaks of the overpayment "which is documented and 'protected' by FCCSEA's records," March 27, 2019 Decision and Entry at 3.

{¶ 10} We review the trial court's decision on the child support impoundment motion for abuse of discretion.  "[A] trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment.  * * * [C]ommon sense and fundamental fairness compel the application of the 'abuse of discretion' standard in reviewing matters concerning child support * * * * '[A]n "abuse of discretion" * * * implies that the court's attitude is unreasonable, arbitrary or unconscionable.' "  *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989) (citations omitted).

{¶ 11} Mr. Roush cites no statute or precedent for the proposition that the trial court abused its discretion by determining that the "nominal" child support overpayment could be deducted from the back end of the support obligation when the "support obligation is terminated earlier to account for said overpayment."  *Compare* Appellant's Brief *with* March 27, 2019 Decision and Entry at 3.  Indeed, the one source that Mr. Roush cited in his motion to the trial court—the child support agency e-mails—told him that "[t]he typical thing to do in these situations is terminate the order a little early"—exactly the course that the domestic relations judge then adopted.  *See* February 5, 2019 Motion to Impound Funds, attached e-mail of January 31, 2019 at 12:21 pm.

{¶ 12} The only argument that Mr. Roush apparently advances against that solution now, apart from pointing to the fact of the overpayment itself and the want of a current refund, is that the trial court "[i]n finding that there was no overpayment" (which the trial court did not find), "and [in finding that] it was his obligation to pay child support for his younger son" (which it was, as the trial court did find), "simply disregards and does not discuss the fact that the child's emancipation will not occur for four years at the time the Court issued its Order." Appellant's Brief at 5, 6-7. But the trial court's decision very much was centered on the judge's understanding that Ms. Clark has an ongoing duty to care for the couple's younger son ("Allison is still responsible for providing care for him during her parenting time"), and that while the overpayment was of less material consequence to Mr. Roush, "[t]here remains a significant income disparity between the parties" and Ms. Clark (to whom Mr. Roush still owed between $300,000 to $400,000 in transfer of retirement funds) was more in need of the money at the moment. March 27, 2019 Decision and Entry at 3-5. That is why the trial court found that "an impound of William's child support obligation now would not be in the best interest of the parties' [younger] son" for whom Ms. Clark is caring. *Id.* at 3.

{¶ 13} We find no abuse of discretion in this determination. *Compare, e.g., Garrett v. Garrett*, 10th Dist. No. 99AP-1050, 2000 Ohio App. Lexis 4830, * 7 (2000) (where trial court "chose to leave defendant's support payments as provided for in the decree," and gave plaintiff two years in which to liquidate overpayment); *Jefferies v. Stanzak*, 135 Ohio App.3d 176, 181 (12th Dist.1999) (domestic relations court has discretion to reduce an overpayment of child support to judgment or grant a credit); *In re Curtis*, 12th Dist. No. CA93-03-009, 1993 Ohio App. Lexis 4463, *5 (1993) ("trial court may consider the individual circumstances of a given case and allow a payor spouse to credit overpayments against arrearages if the court determines it is equitable to do so. The court, however, is by no means obligated to grant such a credit in every case"). Under the circumstances of this long-running case, the trial court's decision was not unreasonable, arbitrary, or unconscionable.

{¶ 14} Having denied Mr. Roush's impoundment motion, the trial court on these facts did not exceed its authority in awarding Ms. Clark $1,000 for partial payment of her attorney fees. As the trial court recited, "[i]n a post-decree motion * * *, the Court may

award 'all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable.' R.C. 3105.73(B). In order to determine whether an award is equitable, 'the court may consider the parties' income, the conduct of the parties, and any other relevant factors the court deems appropriate, but it may not consider the parties' assets.' R.C. 3105.73(B)." March 27, 2019 Decision and Entry at 4.

{¶ 15} Again we apply the abuse of discretion standard. An award of attorney fees "lies within the sound discretion of the court," and "[u]nder R.C. 3105.73(B), in any post-decree motion or proceeding, the court may award reasonable attorney fees and litigation expenses to either party if it merely finds the award equitable" in light of the appropriate considerations. *Karales v. Karales*, 10th Dist. No. 05AP-856, 2006-Ohio-2963, ¶ 25, 23 (citation omitted). We need not rehearse again the trial court's view of the equities taking into account the parties' relative incomes and conduct in the context presented; suffice it to say that on review, we discern no abuse of discretion in the trial court's fee award in this matter.

{¶ 16} To everything there is a season, we are told by Pete Seeger, the Byrds, and perhaps other authorities. That adage may extend even to seemingly never-ending disputations over matters that might be thought to pale in comparison to other problems and responsibilities. We echo the domestic relations judge that "[c]ertainly, there were numerous ways" that the parties might have worked out "to offset the relatively small overpayment" at issue here. *See* March 27, 2019 Decision and Entry at 4. One is entitled to hope that going forward, the parties can benefit mutually from greater accommodation on all sides to the extent appropriate.

{¶ 17} We overrule Mr. Roush's two assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations.

*Judgment affirmed.*

DORRIAN, J., concurs.
SADLER, J., concurs in judgment only.